**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  | : |  |
|--|---|--|
| JOSE OCTAVIO PEREZ, | : |  |
| Petitioner, | : | Civil Action No. 11-5339(NLH) |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Respondent. | : |  |
|  | : |  |

---

**APPEARANCES:**

Jose Octavio Perez
U.S.P. Big Sandy
Inez, KY  41224
     Petitioner pro se

Matthew T. Smith
Assistant U.S. Attorney
District of New Jersey
Camden Federal Building and Courthouse
401 Market Street
Camden, NJ  08101
     Counsel for Respondent

**HILLMAN**, District Judge

     Petitioner Jose Octavio Perez, a prisoner currently

confined at the United States Penitentiary Big Sandy in Inez,

Kentucky, has filed this Motion [1], pursuant to 28 U.S.C.

§ 2255, challenging the sentence imposed upon his conviction, on

grounds of ineffective assistance of counsel in connection with the sentencing proceeding.  See United States v. Perez, Crim. No. 08-0593 (D.N.J.).  For the reasons stated herein, the Petition shall be denied.

I. BACKGROUND

Petitioner was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  See U.S. v. Perez, Crim. No. 08-0593 (D.N.J.).  On December 23, 2008, pursuant to a written plea agreement, Petitioner pleaded guilty.  Id. (Doc. Nos. 16, 17, 18.)  The plea agreement specifically left open the question whether a four-point offense-level enhancement under U.S. Sentencing Guideline 2K2.1(b)(6), for use or possession of a firearm "in connection with another felony offense," applied.

> The United States reserves its right to argue that the defendant used or possessed the firearm ... and ammunition in connection with another felony offense. Specifically, the United States reserves its right to argue that Jose Octavio Perez was in possession of -- and attempted to discard during a foot chase with law enforcement authorities -- forty (40) heat-sealed bags of a substance that field-tested positive for cocaine, and therefore reserves its right to seek an increase of four (4) levels.  See U.S.S.G. § 2K2.1(b)(6).[Fn2]
>
> > [Fn2] Application Note 14 (B) to U.S.S.B. § 2K2.1 states that Subsection (b)(6) applies "in the case of drug trafficking offenses in which a firearm is found in close proximity to drugs, drug-manufacturing material, or drug paraphernalia."  Moreover, a "felony offense," -- here, the distribution, dispensing, possession with

2

intent to distribute a controlled dangerous substance (cocaine) on or within 500 feet of the real property comprising a public housing facility (Abblett Village Apartment Complex) in violation of N.J.S.A. 2C:35-7.1 -- for purposes of subsection (b)(6) means "any federal, state, or local offense ... punishable by imprisonment for a  term exceeding one year, regardless of whether a criminal charge was brought, or conviction obtained."

U.S. v. Perez, Crim. No. 08-0593 (Doc. No. 18, Plea Agreement, Sched. A, ¶ 4).

Much of Petitioner's sentencing hearing was devoted to the question whether the § 2K2.1(b)(6) enhancement should apply. (Answer, Ex. B, Transcript of Sentencing Hearing on March 30, 2009, and Ex. C, Tr. of Sent. Hrg. on April 9, 2009.)  New Jersey State Trooper Christopher Provenzano testified that on the night of January 23-24, 2008, he was assigned to the Strategic Investigation Unit patrolling the Abblett Village housing complex, performing a follow-up investigation regarding a shooting in that area.  Trooper Provenzano described the area as a high-crime area, including crimes related to drug trafficking.  When Trooper Provenzano's vehicle approached a group of young men, at approximately midnight, Trooper Provenzano observed that Petitioner had a handgun in his waistband, which he took out, brandished, and replaced. Petitioner began to ran, and the Trooper followed him, first in the vehicle, and then, when he reached a barricade, on foot.

While Trooper Provenzano and his partner New Jersey State
Trooper Carlos Rodriguez chased Petitioner on foot, Trooper
Provenzano saw Petitioner reach into his pants pocket and
discard a small object, approximately the size of a deck of
cards.  Trooper Provenzano made a mental note of the location
and continued the chase, catching Petitioner less than a minute
later, and arresting him.  After securing Petitioner in a
trooper car, Troopers Provenzano and Rodriguez backtracked the
route of the chase and almost immediately found a small package
of crack cocaine, approximately 5 inches square, in the location
where Petitioner had discarded a small object.  (Answer, Ex. B
at 15-22, 32, 45-46, 51.)  During his testimony, Trooper
Provenzano utilized an aerial photograph of Abblett Village to
mark the locations where he first saw Petitioner, the route of
his vehicle in following Petitioner, the route of the foot
chase, the location where he saw Petitioner discard the small
object and the point where he arrested Petitioner.  (Ans., Ex. B
at 23-24.)  Trooper Provenzano also marked on two photographs
depicting paths travelled in the foot chase the location near a
building where he saw Petitioner discard the small object.
(Ans., Ex. B at 28-30.)  On cross-examination, Trooper
Provenzano testified that the building near where the package of
drugs was found was approximately 20 feet tall and that he was
aware that drug dealers sometimes "roof" their drugs when police

4

are nearby.  (Ans., Ex. B at 38-39.)

Trooper Rodriguez also testified as to the events of the night of January 23-24, 2008, with regard to the chase and arrest of Petitioner and the recovery of a small package of cocaine near the location where Petitioner was arrested. Trooper Rodriguez also marked an aerial photograph with the locations where he first saw Petitioner, where he followed Petitioner in a vehicle then chased him on foot, and where he and Trooper Provenzano arrested Petitioner.  Trooper Rodriguez testified that, while chasing Petitioner, he saw Petitioner discard a small plastic bag, like a sandwich bag, which was smaller than a fist.  He testified that he retraced the route of his foot chase of Petitioner with other troopers and that they recovered the bag of drugs within five minutes after arresting Petitioner.  Petitioner Rodriguez also testified that the area where Petitioner was arrested is a high drug crime area and that it is a common practice for drug dealers to throw their drugs onto the roofs in that complex to avoid being found with drugs when police are in the area.  (Ans., Ex. C at 7-18, 23-25.)

Finally, Terrell Allen testified that he was a resident of Abblett Village in January 2008 and that, on the night of Petitioner's arrest, around midnight, he was in the area selling drugs when Petitioner ran past him followed by two vehicles. Allen testified further that he was opening up a new pack of

drugs to sell and that, when he saw Petitioner running, followed by two vehicles, he tried to throw the drugs on the roof of a nearby building, but they hit the tip of the roof and fell down. Allen testified that he ran after trying to throw the drugs on the roof.  Allen testified that he was standing one street over from the building in the photograph where the troopers found the packet of drugs.  Finally, Allen testified that the packet of drugs the police found was the packet of drugs that he had tried to throw on the roof, as he determined because the drugs he had thrown were missing when he went back later to look for them. (Ans., Ex. C at 36-41.)

After hearing this testimony, and argument from counsel, this Court found that the enhancement should apply.  (Ans., Ex. C at 68, 71-72.)  In brief, this Court found that all of the witnesses appeared to be testifying truthfully, and that their testimony was not inconsistent, but that it appeared, nevertheless, that Mr. Allen was approximately a block away from the location where the packet of drugs was recovered, so that the drugs could not have been his, but must have been Petitioner's.  (Ans., Ex. C at 69-71.)

This Court found that the statutory maximum for the offense was 120 months, and the Guidelines yielded an advisory range of 100 to 120 months.  (Ans., Ex. C at 73.)  Counsel for Petitioner then argued several factors in mitigation, (Ans., Ex. C at 73-

6

75), and Petitioner addressed the Court directly, (Ans., Ex. C at 76). Ultimately, this Court imposed a sentence of 96 months, slightly below the Guidelines advisory minimum. (Ans., Ex. C at 82); U.S. v. Perez, Crim. No. 08-0593 (D.N.J.) (Doc. No. 23, Judgment).

It's my conclusion that a sentence slightly below the advisory guideline ranges here advances the statutory factors. I want to talk a little bit about the nature of the offense here and the defendant's history and characteristics. I'll say now that I believe this to be a fair sentence. I would have exercised my discretion to impose this sentence even if I am wrong on the issue of the extra four points. Even if these were not Mr. Perez's drugs, and I've conclude[d] that it's more likely than not that there were two sets of drugs here, the one Mr. Allen attempted to roof and the one Mr. Perez discarded to the ground, even if that's not true and there were only one set that were recovered, the fact is that Mr. Perez was out on the street corner at night with a gun where people were openly selling drugs or had drugs in an area known for drug dealing. And if there is one thing that's known in this city is that drugs and guns are a deadly combination that are choking and killing this community. And so this is a serious offense and it's a serious offense that Mr. Perez has been involved in before and received sentences for. So it would be remiss if I didn't note where this offense occurred, when it occurred, the circumstances under which it occurred, Mr. Perez's past criminal history, and the threat guns and drugs pose to the people who live in that community. And to afford adequate deterrence both generally for those who become aware of this sentence and to try to demonstrate to Mr. Perez, which had not sunk in before, to protect people from further crimes of this defendant, I believe a lengthy sentence is warranted here.

That having been said, I don't view a guideline sentence in the middle of the range or anywhere in the range, and I'm not going to vary far, but I believe that there are a number of things in Mr. Perez's

favor.

(Ans., Ex. C at 79-80.)

Petitioner appealed the imposition of the four-point offense-level enhancement and the U.S. Court of Appeals for the Third Circuit affirmed.  See U.S. v. Perez, 386 F.App'x 301 (3d Cir. 2010).

Petitioner timely filed this § 2255 motion.  Here, Petitioner challenges his sentence on the grounds that his counsel failed to provide constitutionally adequate representation during sentencing, because (a) she failed to argue (unspecified) facts that would have shown that the sentencing enhancement did not apply, (b) she failed to call to the stand an unnamed second witness on Petitioner's behalf, allegedly because she forgot about the witness, and (c) she failed to present to the Court a map of the area where the crime occurred, drawn by Petitioner, that allegedly would have shown "the consistency in Mr. Allen's testimony."  (Petition, ¶ 11.) The government has answered and this matter is now ready for decision.

## II.  28 U.S.C. § 2255

Title 28 U.S.C. § 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to
> be released upon the ground that the sentence was
> imposed in violation of the Constitution or laws of
> the United States, or that the court was without

8

> jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by
> law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. § 2255(a).  See generally U.S. v. Thomas, 713 F.3d 165 (3d Cir. 2013) (detailing the legislative history of § 2255).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief.  See United States v. Davies, 394 F.3d 182, 189 (3d Cir. 2005).  Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982).

This Court is required to construe pro se pleadings liberally.  See United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).  However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."  U.S. v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (citation omitted).

A district court may summarily deny a § 2255 motion, without an evidentiary hearing, where the "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  See generally U.S. v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005);

United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

### III.   ANALYSIS

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added) (citations omitted), cited in Ross v. Varano, 712 F.3d 784, 797 (3d Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). With respect to the "performance" prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. With respect to the "prejudice" prong, a "reasonable probability" of prejudice is "a probability sufficient to undermine confidence in the outcome." Strickland at 694. Thus, counsel's errors must have been "so serious as to deprive the defendant of ... a trial whose result is reliable." Id. at 687. More

10

specifically, when a defendant asserts ineffective assistance of counsel in connection with sentencing, he must show that, but for counsel's deficient performance, there is a reasonable probability that the sentence would have been less harsh.  See Glover v. United States, 531 U.S. 198 (2001), cited in U.S. v. Hankerson, 496 F.3d 303, 310-11 (3d Cir. 2007).  The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  Id. at 697.

Here, all of Petitioner's claims of error rest on the theory that counsel failed to adequately put forth evidence and argument to establish that the packet of drugs found at the scene was not his, which he contends would have precluded application of the four-point offense-level enhancement for use or possession of the firearm "in connection with another felony offense."  However, at sentencing, this Court expressly stated that it would have imposed the same sentence whether or not the packet of drugs found at the scene belonged to Petitioner. Accordingly, Petitioner cannot establish the "prejudice" prong of the Strickland standard.  Petitioner is not entitled to relief.

III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice

11

or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citation omitted), cited in U.S. v. Williams, No. 13-2976, 2013 WL 4615197, *2 (3d Cir. Aug. 30, 2013).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## IV.  CONCLUSION

For the reasons set forth above, the Petition shall be denied.  An appropriate order follows.

At Camden, New Jersey              _____s/Noel L. Hillman_____
                                   Noel L. Hillman
                                   United States District Judge

Dated:  June 25, 2014